


UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | MAGISTRATE CASE NO.: '09 MJ 8212 |
| Plaintiff, | ) | COMPLAINT FOR VIOLATION OF: |
| v. | ) | Title 8, U.S.C., § 1324(a)(1)(A)(ii) Illegal Transportation of Aliens |
| Eleuterio DIAZ-Hernandez (1) | ) | |
| Hilario RIVAS-Aparicio (2) | ) | Title 21, U.S.C., § 841(a)(1) Possession of Marijuana with Intent to Distribute |
| Johnny RIVAS (3) | ) | |
| | ) | Title 18, U.S.C., § 371 Conspiracy to Transport Illegal Aliens |
| Defendants. | ) | |

The undersigned complainant, being duly sworn, states:

COUNT I

On or about February 9, 2009, within the Southern District of California, defendants Eleuterio DIAZ-Hernandez, Hilario RIVAS-Aparicio and Johnny RIVAS, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, Hector GOMEZ-Martinez, Salvador CALDERON-Velasquez and Jorge Alicio ALCALA-Acosta had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(i).

COUNT II

That on or about February 9, 2009, within the Southern District of California, defendants Eleuterio DIAZ-Hernandez, Hilario RIVAS-Aparicio and Johnny RIVAS did knowingly and intentionally possess with intent to distribute approximately 21.42 kilograms (47.12 pounds) of marijuana a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT III

On or about February 9, 2009, within the Southern District of California, defendants Eleuterio DIAZ-Hernandez, Hilario RIVAS-Aparicio and Johnny RIVAS did knowingly and in reckless disregard of the fact that certain aliens, Hector GOMEZ-Martinez, Salvador CALDERON-Velasquez and Jorge Alicio ALCALA-Acosta had come to, entered and remained in the United States in violation of law, did conspire to transport and move and attempt to transport and move said aliens in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and said defendants committed overt acts in furtherance of said conspiracy as set forth above in Count I, all in violation of Title 18, United States Code, Section 371.

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SARA GALVAN
Special Agent
Immigration & Customs Enforcement

SWORN TO BEFORE AND SUBSCRIBED IN MY PRESENCE THIS 11TH DAY OF FEBRUARY 2009.

PETER C. LEWIS
UNITED STATES MAGISTRATE JUDGE

UNITED STATES OF AMERICA

v.

Eleuterio DIAZ-Hernandez (1)

Hilario RIVAS-Aparicio (2)

Johnny Rivas (3)

STATEMENT OF FACTS

The complainant states that this complaint is based upon statements in the investigative report by Lead Border Patrol Agent (LBPA) J. Pestano, that on February 09, 2009, defendants, Eleuterio DIAZ-Hernandez (DIAZ), a Mexican national with no legal documents to enter, work, or reside in the United States, was arrested near Ocotillo, California, and Hilario RIVAS-Aparicio (H. RIVAS), a legal permanent resident was arrested in Jacumba, California, and Johnny RIVAS (J. RIVAS), a United States citizen, was arrested in Jacumba, California. DIAZ was arrested as the driver of a green 1996 GMC Sierra pick-up truck, bearing California license plate 8L88302, as he transported six undocumented aliens and 21.42 kilograms of marijuana in violation of law. H. RIVAS was the driver and J. RIVAS was the passenger in a red 2002 Nissan Sentra bearing California license plate 5DUU610 as the scout vehicle of the green GMC pick-up.

On February 09, 2009, at approximately 1250 hours, agents were conducting intermittent surveillance in the El Centro, California area on several known stash houses. Border Patrol Agent (BPA) O. Joanicot and LBPA J. Pestano observed J. RIVAS being picked up by H. RIVAS at 205 E. Evan Hewes Highway in the Nissan Sentra as the pick-up driven by DIAZ left the house. H. RIVAS drove to the intersection of Dogwood Road and Main

Street where they met with the GMC Sierra pick-up driven by DIAZ. Both vehicles traveled south on Dogwood Road with the red Nissan Sentra in the lead and the green GMC pick-up following behind. Both vehicles entered Interstate 8 and went west. The movements the driver of the red Nissan Sentra made were immediately duplicated by the driver of the green GMC pick-up. Once on Interstate 8, the green GMC pick-up took the lead and the red Nissan Sentra followed from a close distance.

Agent Joanicot observed the green GMC pick-up appeared to be heavily laden in the back. Suspecting the vehicle was carrying undocumented aliens, Agent Joanicot requested a marked Border Patrol unit to conduct a vehicle stop on the green GMC truck. BPA D. Navarro initiated a vehicle stop on the GMC green pick-up. DIAZ failed to yield for approximately four miles. Once the GMC pick-up stopped, all seven occupants of the vehicle exited and began running into the open desert north of Interstate 8. Agents apprehended all seven occupants and determined they were undocumented aliens. BPA Navarro searched the vehicle and discovered two duffle bags with fifteen packages of a green leafy substance that, when tested, tested positive for marijuana.

Agents Joanicot and Pestano continued to follow the red Nissan Sentra and conducted a vehicle stop in Jacumba, California. The driver was identified as H. RIVAS and the passenger was identified as J. Rivas.

ICE SA P. Lewenthal advised DIAZ of his Miranda rights. DIAZ agreed to answer questions without the presence of as attorney. DIAZ admitted he has no legal documents to enter, reside, or be lawfully employed in the United States. DIAZ stated he was going to initially pay $3,500 USD to be smuggled

into the United States. DIAZ stated he was instructed to drive the green GMC pick-up truck and he would only be charged $1,500.00 USD instead of $3,500 USD. DIAZ admitted he knew the passengers in the vehicle were undocumented aliens.

ICE SA P. Lewenthal advised H. RIVAS of his Miranda rights. H. RIVAS agreed to answer questions without the presence of an attorney. H. RIVAS stated he left his home in Perris, California, on Sunday, February 8, 2009, with his nephew J. RIVAS. H. RIVAS stated he went to visit his girlfriend in Mexicali, and returned to the United States with his nephew. When confronted with information provided by J. RIVAS and H. RIVAS invoked his right to an attorney. All questioning ceased.

ICE SA P. Lewenthal advised J. RIVAS of his Miranda rights. J. RIVAS agreed to answer questions without the presence of an attorney. J. RIVAS stated he traveled from Los Angeles, California, with his uncle. J. RIVAS stated he drove the green GMC pick-up while his uncle, H. RIVAS, followed him in the red Nissan Sentra. J. RIVAS stated he delivered the green GMC pick-up to a house located on Dogwood Road and Main Street in El Centro, California. J. RIVAS stated he met DIAZ at the house and gave him the pick-up keys. J. RIVAS stated DIAZ directed the illegal aliens to get into the pick-up. J. RIVAS stated DIAZ told him he also had two bags of marijuana. J. RIVAS stated he has previouisly delivered vehicles to the same house on three or four separate occasions.

J. RIVAS stated H. RIVAS buys and sells vehicles and uses some of them to smuggle undocumented aliens. J. RIVAS stated H. RIVAS pays him $150.00 to $200.00 each time he helps him drive a

"load vehicle" to the Imperial Valley and scout for law enforcement.

J. RIVAS stated H. RIVAS was talking to DIAZ via Nextel direct connect cellular phone where they were following the truck. J. RIVAS stated H. RIVAS told him there were "pollos" in the GMC pick-up. J. RIVAS stated Hilario RIVAS told DIAZ to "step on the gas and that he would watch for highway patrol and Border Patrol." J. Rivas stated he saw H. RIVAS shake his head from side to side in disapproval stating "oh, no!", as he observed the GMC pick-up being stopped by Border Patrol.

J. RIVAS was shown six-pack photo lineup 1A and positively identified photograph number six (6) as the same man he gave the GMC pick-up keys to and the same man who told him he had two (2) marijuana bags.

Material Witness Hector GOMEZ-Martinez (GOMEZ) stated he entered illegally into the United States on February 9, 2009, through the desert with six other undocumented aliens. GOMEZ further stated he and the others were picked up by a brown Toyota Corolla on the side of the road and taken to an empty lot, where he and the six other aliens were transferred to the GMC pick-up. GOMEZ stated the driver appeared to be very nervous and looked scared. GOMEZ stated the driver was communicating with another man via a Nextel direct connect radio on several occasions. GOMEZ stated that what they were stopped by Border Patrol, the driver told all passengers to run out of the vehicle. GOMEZ was shown six-pack photo lineup 1A and identified photo number six (6) as the driver of the vehicle and the man who instructed him and the other aliens to run. GOMEZ stated he was going to pay $2,000.00

USD to be smuggled into the United States. Photograph number six is that of DIAZ.

Material Witness Salvador CALDERON-Velasquez (CALDERON) stated he does not possess any legal documents to enter, work, or reside in the United States. CALDERON stated he was traveling to Oxnard, California, to seek employment. CALDERON stated he entered illegally into the United States near Mexicali, Baja California, Mexico. CALDERON stated when he entered, he and the others in the group were picked up by a brown Toyota Corolla, and were transported to a house where they were instructed to wait with DIAZ. CALDERON stated DIAZ was at the house when the group arrived. CALDERON stated DIAZ instructed all the aliens to get in the truck and he noticed there were black bags covered with a blanket. CALDERON stated that DIAZ maintained constant communication via Nextel direct connect with another man. CALDERON stated the person he was communicating with via Nextel direct connect was notifying DIAZ to continue driving and that the road was clear of law enforcement. CALDERON stated that when were stopped by Border Patrol, the driver told them to run out of the vehicle.

CALDERON was shown six-pack photo lineup 1A and identified photograph number six (6) as the driver of the vehicle and the man who instructed him and the other aliens to run as they were being detained by the Border Patrol. CALDERON was going to pay $2,000.00 USD to be smuggled into the United States. Photograph number six is that of DIAZ.

Material Witness Jorge Alicio ALCALA-Acosta (ALCALA) stated he has no legal documents to enter, work, or reside in the United States. ALCALA stated that he had made his illegal entry on

February 9, 2009 with six other undocumented aliens. ALCALA further stated that once he was inside the United States, he and the other undocumented aliens were picked up by a brown colored vehicle and transported to a house. ALCALA stated they waited at the house and were eventually placed in a green GMC pick-up. ALCALA stated the driver specifically told all of the undocumented aliens to not touch anything that was inside the cab of the truck. ALCALA stated he saw something that was covered with a blanket in the cab of the truck. ALCALA stated when they were stopped by Border Patrol everyone ran. ALCALA stated he saw the driver throw a radio away about thirty meters from where the pick-up stopped. ALCALA stated the driver was talking to someone via the radio.

ALCALA was shown six-pack photo lineup 1A and identified photo number six (6) as the driver of the vehicle and as the man who instructed him and the other aliens to run as they were being detained by the Border Patrol. ALCALA stated he was to pay $2,300.00 USD to be smuggled to Salinas, California.

The complainant states that the names of the Material Witnesses are as follows:

| **NAME** | **PLACE OF BIRTH** |
|---|---|
| Hector GOMEZ-Martinez | Mexico |
| Salvador CALDERON-Velasquez | Mexico |
| Jorge Alicio ALCALA-Acosta | Mexico |

Further, complainant states that Hector GOMEZ-Martinez, Salvador CALDERON-Velasquez and Jorge Alicio ALCALA-Acosta are citizens of a country other than the United States; that said aliens have admitted they are deportable; that their testimony is

material; that it is impracticable to secure their attendance at trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.